United States District Court
Southern District of Texas

**ENTERED**
July 14, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **SHAMSULLAH HOOTKHIL,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-00768** |
| | § | |
| **RIO GRANDE DETENTION CENTER,** *et al.*, | § | |
| | § | |
| | § | |
| **Respondents.** | § | |

**MEMORANDUM & ORDER**

Before the Court is Petitioner Shamsullah Hootkhil's ("Petitioner") Emergency Motion for Immediate Release. (Dkt. 9.) Petitioner moves for the Court to order Petitioner's immediate release from immigration custody, alleging that Respondents violated the Court's May 29, 2026 Order granting in part Petitioner's habeas petition by failing to provide Petitioner with a fair and constitutionally adequate bond hearing where the burden of proof was placed on the Government.

Because Respondents violated the Court's conditional release order and failed to comply with governing law, Petitioner's Motion, (Dkt. 9), is **GRANTED**. Respondents are ordered to **IMMEDIATELY RELEASE** Petitioner from custody.

**Background**

**A. Factual Background**

Petitioner is a native and citizen of Afghanistan who entered the United States without inspection on January 3, 2025, and was immediately detained by immigration authorities upon his arrival. (*See* Dkt. 1 at 3; Dkt. 5 at 2.) Petitioner filed his petition for writ of habeas corpus,

1 / 15

(Dkt. 1), on April 28, 2026, seeking release from custody on the basis that his detention pursuant to 8 U.S.C. § 1225(b) had become unconstitutionally prolonged. The relevant procedural background of Petitioner's ongoing immigration proceedings was set forth in the Court's prior Order dated May 29, 2026. (*See* Dkt. 7.) As such, the Court briefly reviews the facts relevant to Petitioner's motion.

Petitioner was previously employed for over five years as an interpreter and linguist for the United States Armed Forces in Afghanistan. (Dkt. 1 at 3, Attach. 3; Dkt. 6 at 6.) While in Afghanistan, Petitioner applied for a Special Immigrant Visa ("SIV") which would allow him to come to the United States. (*See* Dkt. 1 at 3.) After the Taliban seized control of Afghanistan, Petitioner alleges that he was targeted by Taliban officials because they became aware of his prior service as an interpreter for the United States Military. (*Id.*) Petitioner alleges that he was repeatedly threatened, that Taliban members came to his home and physically assaulted him, and that he was ultimately sentenced to death by the Taliban. (*Id.* at 3–4.) Additionally, after the U.S. Embassy ceased operations in Afghanistan, Petitioner was unable to complete the SIV visa process and decided to flee Afghanistan. (*Id.*)

Petitioner fled the country and arrived in the United States to seek asylum in early January of 2025. (*See id.* at 4; Dkt. 5 at 2.) Since then, Petitioner has remained in immigration for approximately 17 months while his immigration proceedings have been ongoing. (*See* Dkt. 1 at 3; Dkt. 5 at 2.) A retired U.S. military member who worked with Petitioner in Afghanistan and has known him for 20 years offered to sponsor Petitioner upon his release from immigration custody. (*See* Dkt. 1, Attach. 9; Dkt. 6 at 6; Dkt. 8 at 1; Dkt. 13 at 14–15, 26.) Finally, Petitioner has also experienced serious medical complications while in custody that are associated with a prior surgery and have resulted in hospitalization. (*See* Dkt. 14.) He

currently uses a wheelchair because he is experiencing extensive pain while he awaits additional corrective surgery. (*Id.*)

### B.  Procedural Background

On May 29, 2026, the Court granted in part Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and ordered Respondents provide Petitioner with an individualized custody review before an Immigration Judge (IJ) at which the Government bore the burden of proving, by clear and convincing evidence, that Petitioner presents a risk of flight or a danger to the community within 7 days, or else release Petitioner. (Dkt. 7 at 6.)

On June 4, 2026, Petitioner filed a Status Report, (Dkt. 8), and Emergency Motion for Immediate Release, (Dkt. 9), alleging that an individualized custody hearing was held for Petitioner before an IJ on June 4, 2026, but that the custody review failed to address the constitutional violations the Court identified in its May 29, 2026 Order. (*Id.* at 2–4.) Petitioner also alleged that the IJ determined that Petitioner is not a danger to the community but is a flight risk based only on the absence of scheduled hearing dates in Petitioner's removal proceedings while his appeal to the Board of Immigration Appeals (BIA) remains pending. (*Id.* at 3–4.)

On June 5, 2026, Respondents filed a Status Report, (Dkt. 10), stating that "[o]n June 4, 2026, Petitioner was provided a custody redetermination hearing pursuant to 8 C.F.R. § 1236 before an Immigration Judge (IJ). After full consideration of the evidence presented, the IJ found Petitioner to be a flight risk." (*Id.* at 1–2) (internal citation omitted). Respondents attached a copy of the IJ's order where the IJ explains that Petitioner "is a flight risk for the reasons enumerated on the Court's record." (*Id.*, Attach. 1.)

The Court issued an Order dated June 22, 2026, (Dkt. 11), requiring Respondents to file a supplemental notice supporting their position that the bond hearing complied with the Court's May 29, 2026 Order and provide a transcript or recording of the bond proceedings and a copy of the accompanying evidentiary submissions to the Court, or else immediately release Petitioner from custody. Respondents filed supplemental briefing, (Dkt. 12), the requested documents, (Dkt. 13), and a recording of the hearing with the Court on June 26, 2026. Accordingly, the Court turns to Petitioner's Motion for Immediate Release, (Dkt. 9), and the evidence provided to the Court.

## Discussion

The Court first evaluates whether it has jurisdiction to grant Petitioner immediate release from custody and then turns to whether Petitioner was required to exhaust his administrative remedies before petitioning the Court. Finding no impediment to review, the Court next considers whether the bond hearing that the Government provided to Petitioner was constitutionally adequate and complied with the Court's May 29, 2026 Order.

### A. Jurisdiction

The Court first considers its power to enforce its prior Order requiring Respondents to provide Petitioner with a bond hearing where the Government bore the burden of proof or else immediately release Petitioner from custody. (*See* Dkt. 7 at 6.) The Government argues that 8 U.S.C. § 1226(e) precludes the Court from reviewing the IJ's bond determination and that the Court should deny Petitioner's motion because it lacks jurisdiction over his challenge. (*See* Dkt. 12 at 3.) Indeed, pursuant to 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General under *this section* regarding the detention of any alien or the revocation or denial of bond or parole." (emphasis added); *see also Fuentes v. Lyons,* 808 F.

4 / 15

Supp. 3d 733, 737 (S.D. Tex. 2025). But the plain language of § 1226(e) indicates that it applies only to bond determinations made pursuant to the Attorney General's discretionary authority to issue bond under the relevant provisions authorizing bond in § 1226. Thus, § 1226(e) is inapplicable to Petitioner's case because he is detained under mandatory detention pursuant to § 1225(b), and the Court ordered a bond hearing based on a violation of his due process rights caused by the prolonged nature of his mandatory detention. *See Quituizaca v. Barr*, 2021 WL 6797494, at *2 (W.D.N.Y. Jan. 5, 2021) (expressing skepticism that a Court-ordered bond hearing demanding procedural protections beyond those set out in statute could trigger the limits to judicial review under § 1226(e)).

Even assuming that Petitioner's hearing was somehow conducted under the authority of § 1226, nothing in § 1226(e) would bar the Court from enforcing its prior judgment. As is well established, "[section 1226(e)] does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018)); *see also Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003) ("Section 1226(e) may strip us of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute, but it does not deprive us of all authority to review statutory and constitutional challenges."). Here, Petitioner filed his original petition for writ of habeas corpus in order to "contest[] the constitutionality of the entire statutory scheme under the Fifth Amendment" based on prolonged detention. *See Jennings*, 583 U.S. at 296. The Court then determined that his unreasonably prolonged detention violated his due process rights and, as a remedy, granted

a conditional writ of habeas corpus which ordered Petitioner to be released from custody unless the Government cured the violation.[1] (*See* Dkt. 7 at 6).

Accordingly, Petitioner "does not . . . ask the Court to sit as an appellate tribunal over the Immigration Judge's discretionary bond determination" by asking it to evaluate how the IJ weighed the evidence or the credibility of witnesses. (*See* Dkt. 9 at 2.) Instead, Petitioner requests for the Court to review the IJ's compliance with the Order placing the burden of proof on the Government and to review the constitutional adequacy of the hearing itself. (*See id.* at 2–4.) In other words, he does not ask for the Court to "set aside any action or decision by the Attorney General" or review a "discretionary judgment." Accordingly, the Court is tasked with the narrow goal of determining whether its May 29, 2026 Order was followed and whether Petitioner received the process that he is entitled to under the Due Process Clause. *See also Fernandez Aguirre v. Barr*, 2019 WL 4511933, at *4 (S.D.N.Y. Sept. 18, 2019) ("Section 1226(e) . . . . bars review only of an IJ's 'discretionary' determinations, such as an IJ's weighing of different pieces of evidence; it does not apply to claims that the IJ failed to comply with constitutionally-mandated procedures in reaching those determinations"); *Mendoza v. Noem*, 2026 WL 1470652, at *4 (S.D.N.Y. May 26, 2026) (quoting *Bogle v. DuBois*, 236 F. Supp. 3d 820, 822 (S.D.N.Y. 2017) ("[M]otions such as the one now before the Court do not challenge

---

[1] "A conditional grant occurs when a court finds that 'a constitutional infirmity justifies [the] petitioner's release' but, as an 'accommodation[ ]' to the Government, the court 'provides the [Government] with a window of time' to 'cure the constitutional error' before release is ordered." *Fernandez Aguirre v. Barr*, 2019 WL 4511933, at *3 (S.D.N.Y. Sept. 18, 2019) (alterations in original) (quoting *Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind.*, 53 F.3d 859, 864–65 (7th Cir. 1995)); *see also Smith v. Lucas*, 9 F.3d 359, 366–67 (5th Cir. 1993) ("In the conditional writ cases, the federal court has determined that it has the authority to order immediate release of the [detainee] as a result of the federal law violation; the court chooses, however, to delay the writ to allow the [Government] to correct the problem as best it can."); *Gentry v. Deuth*, 456 F.3d 687, 691–92 (6th Cir. 2006); *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008).

discretionary judgments made by the Government but instead raise potential 'constitutional infirmit[ies] in the procedures followed at a bond hearing.'").

Having determined that § 1226(e) does not bar this Court's review, the Court turns to its ability to enforce its grant of a conditional writ. The Fifth Circuit has explicitly recognized in the criminal context that release is required when the state fails to comply with a conditional writ. *E.g.*, *Smith v. Lucas*, 9 F.3d 359, 366 (5th Cir. 1993) ("[T]he district court is to grant the writ unless the State takes action to remedy the infirmity in the death sentence[.]"); *Hammontree v. Phelps*, 605 F.2d 1371, 1381 (5th Cir. 1979) ("We suggest that the state be given a reasonable time, say ninety days, within which to retry the petitioner; otherwise, it must permanently discharge him from custody."). Accordingly, district courts in the Fifth Circuit have understood that "[t]he framework of the conditional order implicitly requires a district court to assess the [] compliance with its mandate." *Burdine v. Johnson,* 87 F. Supp. 2d 711, 716 (S.D. Tex. 2000).

Therefore, "[w]hen a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance." *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020) (quoting *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019)). This is because "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 n.5 (6th Cir. 2006)). In ordering a bond hearing, "the Court expected Respondent[s] would hold a bond hearing that comports with due process. Because Petitioner alleges that Respondent[s] did not, the Court has jurisdiction to review these allegations and, if needed, enforce its Order." *Lopez v. Paulk*, 2026 WL 961948, at *3 (M.D. Ga. Apr. 6, 2026); *see also Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235 (W.D.N.Y.

7 / 15

2019) (quoting *Enoh v. Sessions*, 2017 WL 2080278, at *2 (W.D.N.Y. May 15, 2017) ("In other words, 'this Court retained the power to grant [release] if the government failed to comply with the [Court's bond] order.'"). Thus, the Court has jurisdiction to decide the limited question of whether Petitioner's bond hearing complied with the Court's May 29, 2026 Order and grant release if it did not.

### B. Exhaustion of Administrative Remedies

The Government argues that Petitioner cannot seek relief from the Court because he did not exhaust his administrative remedies by first bringing his claims that the IJ erred in determining that he was a flight risk on appeal before the BIA. (*See* Dkt. 12 at 2.) First, as the Court has established, Petitioner is not challenging the IJ's discretionary decision to deny bond; he is challenging the constitutional adequacy of the bond hearing and the IJ's compliance with the Court's Order. Second, Respondents point to no statutory authority that requires exhaustion in such circumstances. (*Id.*) Exhaustion of administrative remedies is statutorily required for immigration cases only on appeals from final orders of removal. *Hniguira v. Mayorkas*, 2024 WL 1201634, at *6 (S.D. Tex. Mar. 20, 2024) (citing 8 U.S.C. § 1252(d)(1)). Therefore, because Petitioner does not seek review of a final order of removal, exhaustion of administrative remedies is not statutorily mandated, and the Court is not barred from hearing Petitioner's claims.

Additionally, "[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (quoting *Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir. 1994)). Both concerns are applicable in the present case. Petitioner's motion implicates the review of constitutional questions under the Due Process Clause

as it applies to his detention under 8 U.S.C. § 1225(b), and the BIA does not have authority to adjudicate such questions. *Matter of Rodriguez-Carrillo*, 22 I & N. Dec. 1031, 1035 (BIA 1999) ("[N]either the Immigration Judge nor this Board may rule on the constitutionality of the statutes that we administer."); *see also Petgrave v. Aleman*, 529 F. Supp. 3d 665, 672 n.14 (S.D. Tex. 2021) (citing *Matter of Rodriguez-Carrillo*).

Furthermore, courts decline to impose a requirement to exhaust administrative remedies when further delay will exacerbate the constitutional harms. *See, e.g.*, *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 680–81 (W.D. Tex. 2025) ("Requiring [Petitioner] to wait, indefinitely, for a ruling on that appeal would be inappropriate because it would exacerbate his alleged constitutional injury"); *Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025). Petitioner has already spent 17 months in pre-removal custody, a period that the Court found to be unconstitutionally prolonged when it weighed the factors set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (Dkt. 7 at 3–5.) Thus, requiring Petitioner to seek "BIA review would result in the very harm that the bond hearing was designed to prevent: '"prolonged" detention without due process during lengthy and backlogged removal proceedings.'" *Hechavarria*, 358 F. Supp. 3d at 237 (quoting *Enoh*, 2017 WL 2080278, at *3.) Accordingly, the Court rejects Respondents' argument that Petitioner's failure to appeal to the BIA prevents the Court from considering his motion and enforcing the Court's conditional writ.

## C. Constitutional Adequacy and Compliance with the Court's Conditional Writ of Habeas Corpus

Turning now to the bond hearing itself, the Court finds the June 4, 2026 bond hearing failed to comply with the Court's conditional writ, which required a constitutionally adequate bond hearing at which the Government would bear the burden of establishing Petitioner's

9 / 15

dangerousness or flight risk through clear and convincing evidence, otherwise Petitioner was to be released. The Court reached this conclusion by weighing the three *Mathews* factors, including the length of Petitioner's confinement, the increasing weight of his liberty interest as that confinement continues, and the absence of a definite end to it. (Dkt. 7 at 3–5.) The Court concluded that Petitioner's custody could only continue if justified because he is either a danger or a flight risk, in line with immigration detention's "two regulatory goals: 'ensuring the appearance of aliens at future immigration proceedings' and '[p]reventing danger to the community.'" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (generally when making a custody determination, an immigration judge considers whether the noncitizen "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk").

In his motion, Petitioner argues that the bond hearing was not constitutionally adequate because the IJ's stated rationale for determining that Petitioner was a flight risk violated due process and that the IJ did not comply with the Court's Order to shift the burden of proof to the Government. (*See* Dkt. 9 at 2.) A review of the bond hearing recording confirms that the IJ first determined that Petitioner was a flight risk based on the lack of any scheduled future hearing dates. (*See* Bond Hearing Recording, Min. 10:20–11:44.) After making this determination, the IJ went on to state that she was making an alternative finding on the record. (*See* Bond Hearing Recording, Min. 11:44–12:26.) Specifically, the IJ cited, without explanation, *Matter of Guerra* and *Matter of R-A-V-P-*, 27 I. & N. Dec. 803 (BIA 2020), then "acknowledged the presence of a sponsor in the United States," and stated that she "reviewed the evidence that was presented" by Petitioner. (*Id.*) However, the IJ then again found that

Petitioner had no incentive to return to Court because of the lack of future hearings and for that reason, she held that he presents a risk of flight. (*Id.*)

As to Petitioner's first argument, both parties agree that the IJ expressly found that Petitioner is not a danger to the community and instead determined that Petitioner is a flight risk based on the absence of any scheduled future hearing dates in his immigration proceedings. (*Id.* at 3; Dkt. 12 at 2); (*see* Bond Hearing Recording, Min. 10:20–11:44.) Petitioner argues that this justification for continued detention is unconstitutional, because to treat the absence of a scheduled hearing as a reason to continue detaining Petitioner "is to convert the very source of the constitutional violation—indefinite confinement with no foreseeable end—into the justification for prolonging it." (Dkt. 9 at 3.)

The Court agrees that the absence of future hearings alone cannot support a determination that a petitioner is flight risk. Due process requires specific and individualized justifications for continuing detention when it has become unreasonably prolonged, such as when a noncitizen's appeal is pending with no clear date by which it will be resolved. *See, e.g.*, *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (holding in the § 1226(c) mandatory detention context that the statute only "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes"). Accordingly, the Government cannot justify Petitioner's detention on the rationale that the prolonged and uncertain nature of his ongoing appeal justifies depriving him of his liberty without violating the fundamental protections of the Due Process Clause.

In its response, Respondents raise that the bond hearing was constitutionally adequate because the IJ also "alternatively noted that Petitioner was a flight risk based on *Matter of*

*Guerra*, 24 I&N Dec. 37 (BIA 2006) and *Matter of RAVP*, 27 I&N Dec. 803 (BIA 2020)," and therefore, "[b]ased on the totality of the evidence, the immigration judge found that DHS met its burden by clear and convincing evidence that Petitioner is a flight risk." (Dkt. 12 at 2.) But "[c]ourts have emphasized in a number of contexts, including with respect to due process immigration bond hearings, that adjudicators must provide reasons for their decisions, not only to permit review but as a fundamental element of due process." *Mendoza*, 2026 WL 1470652, at *7 (citing *Navarijo-Orantes v. Barr*, 2019 WL 5784939, at *7 (W.D.N.Y. Nov. 6, 2019)). Here, the IJ's only stated reason for denying bond was the lack of future scheduled hearings, a justification that cannot support the finding that Petitioner is a flight risk. A mere mention of several BIA cases without analysis of their content or significance coupled with a passing reference to Petitioner's sponsor and the more than 30 pages of supporting evidence submitted by Petitioner is insufficient to justify the IJ's findings and violates Petitioner's due process rights. (*See* Dkt. 13.) Thus, the Court finds that the bond hearing was constitutionally inadequate and failed to correct the violation of Petitioner's constitutional rights as ordered by the Court in its May 29, 2026 Order.

The Court also briefly considers whether the IJ properly shifted the burden of proof to the Government. (*See* Dkt. 9 at 2.). Neither party disputes that the IJ properly stated on the record that the Government would bear the burden of proof by clear and convincing evidence. However, a petitioner may still bring a "challenge [] based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Hechavarria*, 358 F. Supp. 3d at 240. That is because, "the mere utterance of the correct standard of proof early in the IJ's decision is insufficient to demonstrate that it was applied when the rest of that decision demonstrates otherwise." *Id.* at 241. A proper

application of "the clear and convincing standard requires the evidence to demonstrate that a factual contention is 'highly probable.'" *Id.* at 240 (citing *Enoh*, 2017 WL 2080278, at *9). Accordingly, several "district courts have found a challenge 'may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion.'" *Villa v. Mullin*, 2026 WL 1583941, at *2 (C.D. Cal. June 2, 2026) (quoting *Lu v. Los Angeles Field Director*, 2026 WL 1455320, at *10 (C.D. Cal. Apr. 15, 2026) and citing *Singh v. LaRose*, 2026 WL 1387428, at *4 (S.D. Cal. May 18, 2026)).

Here, the IJ's actions at the hearing betrayed a grave and fundamental misapplication of the standard for "clear and convincing" evidence despite the IJ's purported compliance with the Court's Order. As stated previously, the IJ failed to make any factual findings on the record pertaining to the ability of Petitioner's proposed sponsor, a retired member of the United States Armed Forces, to ensure Petitioner's appearance at future hearing even after he appeared in support of Petitioner at the hearing and provided testimony on the record. Nor did the IJ make any findings pertaining to the evidence submitted by Petitioner which showed that Petitioner served more than five years as an interpreter for the United States Armed Forces, has received commendations and letters of recommendation from U.S. military personnel, and has a confirmed sponsor who offered evidentiary proof of housing at a fixed address and his ability to provide financial support. (*See* Dkt. 13.) Instead, the IJ summarily determined that Petitioner was a flight risk based on the lack of future hearing dates, a consideration that has no basis in controlling law. *See, e.g.*, *Matter of Dobrotvorskii*, 29 I. & N. Dec. 211 (BIA 2025) (reviewing an IJ's finding on flight risk under the clear and convincing evidence standard using the *Guerra* factors and requiring the IJ to consider the existence of a valid, reliable, and credible sponsor.) Thus, a review of the record demonstrates that IJ's stated reasons for her determination could

not have supported her determination that Petitioner was a flight risk based on clear and convincing evidence in accordance with the Court's May 29, 2026 Order.

Therefore, the Court holds that because Petitioner's bond hearing failed to cure the constitutional violations identified by the Court and failed to comply with its prior Order, he is entitled to further relief. The Court acknowledges that it should weigh the risk of releasing a petitioner from detention when ordering release as a remedy based upon the Government's failure to comply with a conditional writ. *E.g.*, *Mendoza*, 2026 WL 1470652, at *9. Accordingly, in line with other district courts having considered such circumstances, the Court will enforce its grant of the conditional writ by ordering Respondents to immediately release Petitioner from custody on reasonable and appropriate conditions of supervision aimed at mitigating Petitioner's risk of flight. *See, e.g.*, *G.F.F. v. Francis*, 2026 WL 924072, at *4 (S.D.N.Y. Apr. 4, 2026) ("The Court therefore orders [Petitioner's] release on the above conditions, which reasonably minimize [Petitioner's] risk of flight."); *Mathon v. Searls*, 623 F. Supp. 3d 203, 219 (W.D.N.Y. 2022) (Ordering release and acknowledging that "the existence of some risk associated with release does not bar the Court from ordering it as a remedy."); *Salazar-Lopez v. Mullin*, 2026 WL 1414066, at *3 (D. Nev. May 20, 2026); *N.A. v. Warden, Adelanto Det. Facility*, 2026 WL 1045196, at *10 (C.D. Cal. Apr. 15, 2026).

## CONCLUSION

For the foregoing reasons, Petitioner's Motion, (Dkt. 9), is **GRANTED**. The Court enforces its judgment as follows:

1. Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from custody, under reasonable and appropriate conditions of release, and to submit a status report to the Court confirming Petitioner's release within 24 hours of the date of this Order.

2.      Respondents must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention.

3.      Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than three hours** prior to Petitioner's release from custody.

IT IS SO ORDERED.

SIGNED this July 14, 2026.

_____
Diana Saldaña
United States District Judge